NS:TH/DGR/ALK/AM
F. #2018R00369

**FILED**
*3:13 pm, Aug 04, 2022*
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

AGOSTINO GABRIELE,
ANTHONY PIPITONE,
   also known as "Little Anthony,"
VITO PIPITONE and
HECTOR ROSARIO,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

1:22-cr-00355(ARR)(RER)

Cr. No. _____
(T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(b)(1), 1001(a)(2),
1512(c)(2), 1955(a), 1955(d), 1956(h),
1962(c), 1963, 1963(a), 1963(m), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

The Enterprise

1.      The Bonanno organized crime family of La Cosa Nostra (the "Bonanno crime family" or the "Enterprise"), including its leaders, members and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The Bonanno crime family constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.  The Bonanno crime family engaged in, and its activities affected, interstate and foreign commerce.  The Bonanno crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families—the Bonanno, Colombo, Gambino, Genovese and Lucchese crime families—were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Bonanno crime family had a hierarchy and structure. The head of the Bonanno crime family was known as the "boss." The Bonanno crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.

5. Members of the Bonanno crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. When this occurred, the member functioned in an "acting" capacity instead of an incarcerated or temporarily incapacitated Bonanno family

member who continued to hold the "official," as opposed to acting, position within the family. Further, on occasion, the Bonanno crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

6. Below the administration of the Bonanno crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

7. Only members of the Bonanno crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

8. Many requirements existed before an associate could become a member of the Bonanno crime family. The Commission of La Cosa Nostra from time to time limited the number of new members who could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family

then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things, swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

9. The principal purpose of the Bonanno crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Bonanno crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, illegal gambling and loansharking. The members and associates of the Bonanno crime family also furthered the Enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

10. Although the primary purpose of the Bonanno crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes without the approval of higher-ranking members of the family. For those purposes, members and associates of the Enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

11. The members and associates of the Bonanno crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to

murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the Enterprise.

12. Members and associates of the Bonanno crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendants

13. At various times relevant to this Indictment, the defendant AGOSTINO GABRIELE was an associate of the Bonanno crime family.

14. At various times relevant to this Indictment, the defendant ANTHONY PIPITONE, also known as "Little Anthony," was a captain and soldier within the Bonanno crime family.

15. At various times relevant to this Indictment, the defendant VITO PIPITONE was a soldier within and associate of the Bonanno crime family.

16. At various times relevant to this Indictment, the defendant HECTOR ROSARIO was an associate of the Bonanno crime family.

### COUNT ONE
(Racketeering)

17. The allegations contained in paragraphs one through 15 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between January 2012 and January 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AGOSTINO GABRIELE, ANTHONY PIPITONE, also known as "Little Anthony," and VITO PIPITONE, together with others, being persons employed by and associated with the Bonanno crime family, an enterprise that engaged in, and the activities of

4

which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.

## RACKETEERING ACT ONE
(Illegal Gambling Business – La Nazionale Soccer Club)

19.     In or about and between May 2012 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY PIPITONE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as "La Nazionale Soccer Club" involving illegal joker poker-type gambling machines and poker games located in and around 80-13 Myrtle Avenue in Queens, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days, in violation of Title 18, United States Code, Sections 1955(a) and 2.

## RACKTEERING ACT TWO
(Illegal Gambling Business – Glendale Sports Club)

20.     In or about and between May 2012 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY PIPITONE and VITO PIPITONE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part

of an illegal gambling business, to wit: a gambling business known as "Glendale Sports Club" involving illegal joker poker-type gambling machines and poker games located in and around 74-03 Myrtle Avenue in Queens, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days, in violation of Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT THREE
(Illegal Gambling Business – Gran Caffe)

21.     In or about and between May 2012 and January 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AGOSTINO GABRIELE, ANTHONY PIPITONE and VITO PIPITONE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as the "Gran Caffe" involving illegal joker poker-type gambling machines and poker games located in and around 31 Hempstead Avenue in Lynbrook, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a

gross revenue of at least $2,000 in one or more single days, in violation of Title 18, United States Code, Sections 1955(a) and 2.

### RACKETEERING ACT FOUR
(Illegal Gambling Business – Soccer Club)

22.　In or about and between May 2017 and June 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AGOSTINO GABRIELE, ANTHONY PIPITONE and VITO PIPITONE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as the "Soccer Club" involving illegal joker poker-type gambling machines and poker games located in and around 129 Rockaway Avenue in Valley Stream, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days, in violation of Title 18, United States Code, Sections 1955(a) and 2.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

### COUNT TWO
(Money Laundering Conspiracy)

23.　In or about and between May 2012 and November 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY PIPITONE, also known as "Little Anthony," VITO PIPITONE, and AGOSTINO GABRIELE, together with others, did knowingly and intentionally conspire to

conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: the operation of illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i); and (b) knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT THREE
(Illegal Gambling Business – La Nazionale Soccer Club)

24. In or about and between May 2012 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY PIPITONE, also known as "Little Anthony," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as "La Nazionale Soccer Club" involving illegal joker poker-type gambling machines and poker games located in and around 80-13 Myrtle Avenue in Queens, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially

continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT FOUR
(Illegal Gambling Business – Glendale Sports Club)

25. In or about and between May 2012 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY PIPITONE, also known as "Little Anthony," and VITO PIPITONE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as "Glendale Sports Club" involving illegal joker poker-type gambling machines and poker games located in and around 74-03 Myrtle Avenue in Queens, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT FIVE
(Illegal Gambling Business – Gran Caffe)

26. In or about and between May 2012 and January 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AGOSTINO GABRIELE, ANTHONY PIPITONE, also known as "Little Anthony," and VITO PIPITONE, together with others, did knowingly and intentionally

Case 1:22-cr-00355-ENV   Document 1   Filed 08/04/22   Page 11 of 17 PageID #: 11

11

conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as the "Gran Caffe" involving illegal joker poker-type gambling machines and poker games located in and around 31 Hempstead Avenue in Lynbrook, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT SIX
(Illegal Gambling Business – Soccer Club)

27. In or about and between May 2017 and June 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AGOSTINO GABRIELE, ANTHONY PIPITONE, also known as "Little Anthony," and VITO PIPITONE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business known as the "Soccer Club" involving illegal joker poker-type gambling machines and poker games located in and around 129 Rockaway Avenue in Valley Stream, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.30(a)(2), 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation

for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT SEVEN
(Obstruction of Justice)

28. In or about January 2020, within the Eastern District of New York and elsewhere, the defendant HECTOR ROSARIO, together with others, did knowingly, intentionally and corruptly obstruct and impede, and attempt to obstruct and impede, an official proceeding, to wit: a federal grand jury investigation in the Eastern District of New York.

(Title 18, United States Code, Section 1512(c)(2), 2 and 3551 et seq.)

## COUNT EIGHT
(False Statements)

29. On or about January 27, 2020, within the Eastern District of New York and elsewhere, the defendant HECTOR ROSARIO did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Bureau of Investigation ("FBI"), in that the defendant falsely stated to Special Agents of the FBI that (a) he did not know the identity of John Doe, an individual whose identity is known to the Grand Jury, and (b) he was not familiar with the gambling business known as "Sal's Shoe Repair" located in and around 41 Merrick Avenue in Merrick, New York, when, in fact, as ROSARIO then and there well knew and believed, he did know the identity of John Doe and was familiar with that gambling business.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

30. The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963(a), which requires any person convicted of such offense to forfeit: (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

31. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

32. The United States hereby gives notice to the defendants charged in Count Two that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21 United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS THREE THROUGH SIX

34. The United States hereby gives notice to the defendants charged in Counts Three through Six that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which provides for the forfeiture of any property, including money, used in violation of Title 18, United States Code, Section 1955.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

By: _____
Assistant U.S. Attorney

F.#: 2018R00369

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

AGOSTINO GABRIELE, ANTHONY PIPITONE, also known as "Little Anthony," VITO PIPITONE and HECTOR ROSARIO,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1001(a)(2), 1512(c)(2), 1955(a), 1955(d), 1956(h), 1962(c), 1963, 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____*Thomas J Pardo*
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

*Tanya Hajjar, Drew Rolle, Anna Karamigios, Assistant U.S. Attorneys;*
*Abigail Margulies, Special Assistant U.S. Attorney (718) 254-7000*