

U.S. Department of Justice

United States Attorney
Eastern District of New York

TH:DGR/ALK/AM
F. #2018R00369

271 Cadman Plaza East
Brooklyn, New York 11201

August 16, 2022

<u>By Hand and ECF</u>

The Honorable James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Agostino Gabriele, <u>et al.</u>
      <u>Criminal Docket No. 22-355 (ENV)    </u>

      United States v. Joseph Macario, <u>et al.</u>
      <u>Criminal Docket No. 22-356 (ENV)    </u>

Dear Judge Cho:

    The government respectfully submits this letter to set forth its position on bail in advance of the defendants' arraignments on the above-referenced Indictments. For the reasons set forth below, the defendants—who are members and associates of the Genovese and Bonanno organized crime families of La Cosa Nostra—pose a danger to the community and a risk of flight and should be released only with strict conditions and after posting substantial, heavily secured bonds signed by financially responsible sureties.

I.  <u>The Indictments</u>

    On August 4, 2022, a grand jury sitting in the Eastern District of New York returned an Indictment charging Joseph Macario, also known as "Joe Fish," Carmelo Polito, also known as "Carmine Polito," Salvatore Rubino, also known as "Sal the Shoemaker," and Joseph Rutigliano, also known as "Joe Box"—each of whom is a member or associate of the Genovese crime family—with racketeering, in violation of Title 18, United States Code, Section 1962(c); money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and the operation of several illegal gambling businesses, in violation of Title 18, United States Code, Section 1955(a) ("the Genovese Indictment"). Polito is separately charged in the Genovese Indictment with attempted Hobbs Act extortion. The Genovese Indictment also charges Mark Feuer, who is alleged to be an associate of the

Genovese crime family, with operating an illegal sports betting business with Polito, in violation of Title 18, United States Code, Section 1955(a).

Also on August 4, 2022, the grand jury returned an Indictment charging Agostino Gabriele, Anthony Pipitone, also known as "Little Anthony," and Vito Pipitone—each of whom is a member or associate of the Bonanno crime family—with racketeering, in violation of Title 18, United States Code, Section 1962(c); money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and the operation of several illegal gambling businesses, in violation of Title 18, United States Code, Section 1955(a) ("the Bonanno Indictment").  The Bonanno Indictment additionally charges Hector Rosario, a detective with the Nassau County Police Department, with obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2) and making materially false statements to Special Agents from the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001(a).

The indictments are the result of a multi-year investigation by this Office, the Federal Bureau of Investigation, and the Nassau County District Attorney's Office into the ongoing criminal activities of the Genovese and Bonanno crime families—both criminal enterprises that engage in conduct involving murder, robbery, extortion, money laundering and obstruction of justice.  The evidence in support of the charges includes testimony from cooperating witnesses, judicially authorized wiretap intercepts, judicially authorized audio and video surveillance, consensual recordings, and law enforcement surveillances, among other evidence.

II.     The Offense Conduct[1]

For years, the Genovese and Bonanno crime families operated several illegal gambling operations in the Eastern District of New York, which generated substantial revenue for the crime families.  In particular, the government's investigation revealed that, beginning in at least May 2012, the Genovese and Bonanno crime families jointly operated a lucrative illegal gambling parlor concealed inside a coffee shop called the "Gran Caffe." Anthony Pipitone, on behalf of Bonanno crime family, and Polito and Macario, on behalf of the Genovese crime family, successfully negotiated a profit split for the gambling location, which ensured that each crime family benefited from the illegal gambling operation.  For years thereafter, they did.

Rutigliano and Rubino collected the proceeds for the Genovese crime family and distributed them up to higher ranking members, including Polito and Macario.  At times,

---

[1] The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.  The government is entitled to proceed by proffer in a detention hearing. United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

Gabriele collected the proceeds for the Bonanno crime family and distributed them up to higher ranking members of that family, including Anthony Pipitone and Vito Pipitone. In addition to the Gran Caffe, the Genovese crime family—through Polito, Macario, Rutigliano, Rubino and others—operated illegal gambling parlors at establishments called Sal's Shoe Repair and the Centro Calcio Italiano Club. The Bonanno crime family—through Anthony Pipitone, Vito Pipitone, Gabriele and others—operated illegal gambling parlors at establishments called the Soccer Club, La Nazionale Soccer Club and Glendale Sports Club.

These illegal gambling businesses generated substantial cash for the Bonanno and Genovese crime families. For instance, records and information obtained pursuant to the investigation and information from a cooperating witness reflects that the Genovese and Bonanno crime families typically earned over $10,000 per week from the Gran Caffe alone. Those proceeds were then laundered through clandestine cash transfers to the defendants, and through "kick ups" to the crime families' leaders as tribute payments.

The investigation further revealed that Polito and Feuer operated an illegal online sports betting website called "PGWLines," and that Polito threatened individuals with physical harm when Polito was owed money in connection with that online gambling operation. For example, in an October 2019 call concerning a delinquent debtor whose "face" Polito had previously threatened to "break," Polito instructed an associate to relay a new message to the debtor: "Tell him I'm going to put him under the fucking bridge."

Finally, the investigation also revealed that Rosario, a detective with the Nassau County Police Department, did favors at the behest of members of the Bonanno crime family, including by offering to use his position as a police detective to raid competing gambling businesses in exchange for payment. One of the competing parlors that Rosario agreed to raid was Sal's Shoe Repair, a Genovese-controlled gambling parlor. Rosario later made materially false statements to Special Agents from the Federal Bureau of Investigation including denying any knowledge of Sal's Shoe Repair and a member of the Bonanno crime family.

III.    The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight and no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight or obstruction of justice must be supported by a preponderance of the evidence. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

IV.     The Defendants Pose a Danger to the Community and Risk of Flight

    A.     The Seriousness of the Danger Posed by the Defendants

The seriousness of the danger posed by the defendants' release should not be underestimated given their membership in, and association with, the Genovese and Bonanno crime families.

As an initial matter, it is well-established that defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely that they will commit even non-violent crimes that are detrimental to the community.  See S. Rep. No. 225 98th Cong., 1st Sess. at 6-7, as reprinted in 1984 U.S. Code Cong. & Admin. News 3182 ("Senate Report"), 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."); United States v. DiSano, No. 18-CR-337-3 (WFK), 2018 WL 11191538, at *2 (E.D.N.Y. Dec. 14, 2018) ("Defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community."); United States v. Gotti, 219 F. Supp. 2d 296, 298 (E.D.N.Y. 2002) ("Danger to the community is not limited to violent crimes; it includes crimes that would harm the community.").

With respect to organized crime defendants, courts have observed that such defendants pose a particular threat to the community due to the continuing nature of these criminal organizations.  At bottom, because organized crime defendants are often career criminals who belong to an illegal enterprise, they pose a distinct threat to commit additional crimes if released on bail.  See United States v. Salerno, 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986) (finding that the illegal businesses of organized crime require constant attention and protection, and recognizing a strong incentive on the part of its leadership to continue business as usual).

Accordingly, courts in this Circuit have routinely detained organized crime defendants charged with racketeering-related offenses.  See, e.g., United States v. Giallanzo, et al., No. 17-CR-155 (DLI) (E.D.N.Y. 2007) (case in which Bonanno family acting captain Ronald Giallanzo, soldiers Michael Palmaccio, Michael Padavona and Nicholas Festa and associates Christopher Boothby, Evan Greenberg, Michael Hintze and Robert Tanico all detained as dangers to the community); United States v. Cirillo, Cr. No. 05-212 (SLT), slip op. (E.D.N.Y. 2005) (Genovese family acting bosses Dominick Cirillo and Lawrence Dentico, as well as Genovese family captain Anthony Antico, detained as dangers to the community), aff'd, 149 Fed. Appx. 40 (2d Cir. 2005); United States v. Gotti, 219 F. Supp. 2d 296, 299-300 (E.D.N.Y. 2002) (Gambino family acting boss Peter Gotti detained as danger

to the community), aff'd, United States v. Ciccone, 312 F.3d 535, 543 (2d Cir. 2002); United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gambino family captain Carmine Agnello detained as danger to the community); United States v. Defede, 7 F. Supp. 2d 390, 395-96 (S.D.N.Y. 1998) (Luchese family acting boss Joseph Defede detained as danger to the community); United States v. Salerno , 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986) (Genovese acting boss and captain detained as danger to the community), order vacated, 794 F.2d 64 (2d Cir.), order reinstated, 829 F.2d 345 (2d Cir. 1987).

    B.    The Defendants' History and Characteristics

The defendants' history and characteristics also weigh in favor of strict conditions of release and substantial bail packages.

    1.    The Genovese Defendants

The defendant Carmelo Polito, also known as "Carmine Polito," is an acting captain in the Genovese crime family and has previously been convicted of significant acts of violence. As an acting captain, Polito poses a particular threat if he were released because he has the ability to direct those who report to him to commit crimes on his behalf. See Salerno, 631 F. Supp. at 1374-75 (holding that defendant would be a danger to the community if released on bail based on evidence that he was a captain in an organized crime family who managed the enforcement operations of the enterprise). Moreover, Polito is charged with the attempted extortion of an individual who owed money in connection with sports bets the individual lost on Polito's website. As detailed above, in furtherance of that attempted extortion, Polito instructed an associate to relay a message to the debtor: "Tell him I'm going to put him under the fucking bridge."

Polito has a serious criminal history. In 2003, after a ten-day trial in this District, Polito was convicted for his participation in planning the November 24, 1994 murder of two Genovese crime family associates (and subsequently obstructing the federal investigation into that crime) and sentenced principally to life imprisonment. See United States v. Bruno, et al., No. 92-CR-047 (E.D.N.Y. 1992). In 2004, the Second Circuit vacated Polito's murder in-aid-of racketeering conviction on the ground that, although the evidence established that Polito was a member of the Genovese crime family and participated in the deadly shootings, the government had not adduced sufficient proof that the shootings were to maintain or increase Polito's status in the family. See United States v. Bruno, 383 F.3d 65, 84 (2d Cir. 2004) ("[T]he evidence established that Polito had several motivations for wanting to kill [the victims]."). [2] Polito also has a federal conviction for conspiring to commit bank robbery, for which he was sentenced to 24 months' imprisonment. See United States v. Lester et al., No. 95-CR-216 (S.D.N.Y. 1995).

---

    [2]    In 2007, after a trial in Kings County Supreme Court, Polito was acquitted of murder charges based on the same conduct.

5

The defendant Joseph Macario, also known as "Joe Fish," is a longstanding member, or soldier, of the Genovese crime family. Although Macario has no known criminal history, intercepted calls and surveillances revealed that Macario has close ties to numerous captains and soldiers within the Genovese crime family and meets with them regularly.

The defendant Joseph Rutigliano is a longtime associate of the Genovese crime family. Rutigliano has a federal conviction for conspiring to operate illegal gambling businesses, notably, the same type of criminal conduct for which he is charged in this case. See United States v. Gruttadauria, et al., No. 05-CR-717 (ADS) (E.D.N.Y. 2005). Rutigliano was sentenced to 27 months' imprisonment in that case. Rutigliano also has several New York State convictions for his participation in gambling operations, including a 1994 conviction for Possession of a Gambling Device and a 1984 conviction for Attempted Promoting Gambling in the Second Degree.

The defendant Salvatore Rubino, also known as "Sal the Shoemaker," is an associate of the Genovese crime family. Rubino has a federal conviction for conspiring to operate illegal gambling businesses. See United States v. Gruttadauria, et al., No. 05-CR-717 (ADS) (E.D.N.Y. 2005). Rubino was sentenced to four months' imprisonment in that case. Rubino also has a 2004 New York State conviction for Disorderly Conduct stemming from his participation in a gambling operation in Nassau and Suffolk Counties.

Finally, the defendant Mark Feuer is an associate of the Genovese crime family who, as detailed above, operated an illegal online gambling business with Polito.

2. The Bonanno Defendants

The defendant Anthony Pipitone, also known as "Little Anthony," is two-time convicted felon and a captain in the Bonanno crime family. As a captain, Anthony Pipitone poses a particular threat on release because he has the ability to direct those who report to him to commit crimes on his behalf. See Salerno, 631 F. Supp. at 1374-75. Indeed, as set forth below, Pipitone has successfully undertaken crimes even under Court supervision. The instant federal criminal case is Anthony Pipitone's third. In 1993, Pipitone was sentenced in the Southern District of New York to 63 months' imprisonment for heroin distribution. See United States v. Pipitone, No. 92-CR-275 (WK) (S.D.N.Y.). In 2010, Judge Garaufis sentenced Pipitone to 46 months' imprisonment for his role in a violent stabbing committed on behalf of the Bonanno crime family. See United States v. Bana, et al., No. 09-CR-672 (NGG) (E.D.N.Y. 2009). In 2016, Pipitone was sentenced to 24 months' custody for violating the terms of his supervised release by continuing to meet with members of

6

organized crime. He was released from custody in October 2017 to serve a one-year supervised release term, during which he undertook the instant offense.[3]

The defendant Vito Pipitone, Anthony Pipitone's brother, is a soldier in the Bonanno crime family. Vito Pipitone also has federal conviction for assault in-aid-of racketeering, which stemmed from the same violent stabbing on behalf of the Bonanno crime family. See United States v. Bana, et al., No. 09-CR-672 (NGG) (E.D.N.Y. 2009). Vito Pipitone was sentenced to 41 months' imprisonment in that case.

The defendant Agostino Gabriele is an associate of the Bonanno crime family. While Gabriele does not have any known criminal history, he stands charged with numerous serious offenses on behalf of the Bonanno crime family in this case. Notably, by acting as an intermediary on multiple occasions, he knowingly helped Anthony Pipitone commit the instant offense and evade detection while on supervised release.

Finally, the defendant Hector Rosario is a detective with the Nassau County Police Department who agreed to accept money from the Bonanno crime family in exchange for his offer to use his position as a police officer to arrange for raids of competing gambling

---

[3]    In United States v. Barnett, the district court noted several factors that were "critical to the analysis of whether various bail conditions are sufficient to ameliorate the risks of danger and flight particular defendants might pose," noting:

> The quintessential factor is whether a defendant will do what the court directs. There are a variety of conditions that could reduce potential danger and flight if a defendant would abide by them. Examples include home confinement, electronic monitoring, curfews, pretrial services or family supervision, drug testing and treatment, and employment or educational mandates. <u>However, none of these conditions will suffice to protect the community or minimize the flight risk if a defendant's past behavior amply demonstrates that he will not honor them.</u> In other words, past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.

United States v. Barnett, No. 5:03-CR-243 (NAM), 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003) (emphasis added). In light of Anthony Pipitone's readiness to commit serious additional federal crimes while under this Court's supervision, the Court should require a particularly substantial bail package, and should not release him absent such a package, to mitigate the risk of danger or flight from prosecution.

parlors. Rosario's willingness to abuse his position of authority and to lie to law enforcement warrant a substantial bail package.

   C.  <u>Nature and Circumstances of the Crimes Charged and Evidence of Guilt</u>

   The defendants committed the charged racketeering and gambling offenses over a significant period of time, from at least 2012 to the present.

   The evidence of the defendants' guilt is exceedingly strong. The government intends to prove the defendants' guilt at trial through, among other things, consensual recordings; intercepts of telephone calls obtained pursuant to court-authorized wiretaps; testimony of multiple witnesses; and physical and documentary evidence.

V.  <u>Conclusion</u>

   For the foregoing reasons, the government respectfully submits that the defendants should not be released unless and until they post substantial secured bonds, signed by financially responsible sureties. Further, any such release should be under strict conditions of supervision.

               Respectfully submitted,

               BREON PEACE
               United States Attorney

          By:    /s/
            Tanya Hajjar
            Drew Rolle
            Anna Karamigios
              Assistant U.S. Attorneys
            Abigail Margulies
              Special Assistant U.S. Attorney
            (718) 254-7000

cc:  Hon. Eric N. Vitaliano (by hand and ECF)
    Defense Counsel (by hand and ECF)
    Clerk of Court (by ECF)